## In re DEVLIN.

(District Court, D. Kansas, First Division. March 19, 1910.)

### No. 809.

1. BANKRUPTCY (§ 402*)—DISTRIBUTION OF ESTATE—DEATH OF BANKRUPT—WHAT LAW GOVERNS—PREFERRED CLAIMS.

Where, pending bankruptcy proceedings, the bankrupt died, his estate was distributable according to the bankruptcy law, and not according to the state statutes of distribution, so that the state was not entitled to a preference in the payment of its claims by virtue of such statute.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 402.*]

2. BANKRUPTCY (§ 402*)—PREFERRED CLAIMS—CLAIMS OF STATE—STATUTES.

Provisions of a state statute, requiring all debts due the state to be paid as a claim of the third class out of the estate of a deceased person, was not such a law of a general nature of the state as would entitle the state to a preference in the payment of its claims out of the estate of the bankrupt under Bankruptcy Act July 1, 1898, c. 541, § 64b (5), 30 Stat. 563 (U. S. Comp. St. 1901, p. 3448), providing for payment in full of debts owing to any person, and by the laws of the state is entitled to priority.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 402.*]

3. BANKRUPTCY (§ 350*)—CLAIMS—PRIORITY OF PAYMENT—CLAIMS OF STATE—COMMON LAW.

Gen. St. Kan. 1901, § 8014, provides that the common law is modified by constitutional and statutory law, judicial decisions, and the conditions and wants of the people, shall remain in force in aid of the general statutes of the state, but that the rule of the common law, that statutes in derogation thereof shall be strictly construed, shall be inapplicable to any general statute, but that all such statutes shall be liberally construed to

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

promote their object. At the same session of the Legislature, the state's only insolvency law was passed relating to voluntary assignments for the benefit of creditors, which provided that the act should be for the benefit of all creditors of the assignor in proportion to their respective claims. *Held*, that such insolvency act comprised a comprehensive scheme for the conservation and disposition of the estates of persons assigning their property for the benefit of creditor and superseded the common-law rule that debts due the crown were entitled to priority of payment as against general creditors of an insolvent, if such rule ever was in force in Kansas, and hence in bankruptcy proceedings claims of the state were not entitled to priority under Bankruptcy Act July 1, 1898, c. 541, § 64b (5), 30 Stat. 563 (U. S. Comp. St. 1901, p. 3448), preferring debts owing to any person who by the laws of the state is entitled to priority.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 350.*]

In the matter of Charles J. Devlin, bankrupt. On petition of the State of Kansas for preferential payment of defendant's demands out of the bankrupt's estate. Denied.

F. S. Jackson, Atty. Gen., C. C. Coleman, F. L. Williams, Mulvane & Gault, and D. R. Hite, for the State.

John S. Dean, for bankrupt estate.

Mulvane & Gault and D. R. Hite, amici curiæ.

POLLOCK, District Judge. The state of Kansas presents two claims against the estate of the bankrupt. The first arising on a certain bond or obligation made and entered into between the state and Thomas T. Kelly, Treasurer of the State of Kansas, as principal, executed by the bankrupt as surety, January 9, 1905; the bond being in the penal sum of $500,000. The second arising on a certain bond or obligation entered into between the state and the First National Bank of Topeka, principal, as a depository of state moneys, executed by the bankrupt and others as sureties, January 27, 1903; this bond being in the penal sum of $100,000.

The extent of the obligation so incurred by the bankrupt to the state by the execution of the above-mentioned bonds is in no wise involved herein. The single question here presented for decision is: Has the state the right to be preferred in payment of whatever amounts may be determined due it on the foregoing obligations, on account of the default of the principals therein, over other simple contract creditors of the bankrupt, under the provisions of the bankruptcy act, arising out of the nature and character of the state as a claimant?

In this regard the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447]), in section 64b, provides as follows:

"The debts to have priority except as herein provided and to be paid in full out of bankrupt estates and the order of payment shall be: * * * (5) Debts owing to any person who by the laws of the states or the United States is entitled to priority."

It is thus apparent the question presented for decision must be ruled by a consideration of the laws of the state, for, if the state be found by its laws to have reserved to itself the right of priority of payment of its demands over other claimants to the estate of an insolvent debtor, it is clear it was the object, intent, and purpose of the above-quoted provision of the bankruptcy act to preserve and enforce such right.

In Re Western Implement Co. (D. C.) 166 Fed. 576, affirmed and approved by the Circuit Court of Appeals for this Circuit (171 Fed. 81, 96 C. C. A. 185), the claim to priority of payment was based on the provisions of the insolvency laws of the state of Minnesota. In this state the insolvency laws of the state do not make specific provision for the preferential payment of debts due the state. It is therefore contended by the trustees the state in this case is entitled only to the rights accorded a general creditor for the payment of its demands, as they may be ascertained on the obligations in question. On the contrary, it is the contention of the state its right of priority of payment must be accorded for two reasons: (1) That by the course of the common law in force in this state preferential payment of the demands of the state must be allowed. (2) As in this case the bankrupt deceased within a short period of time after the institution of this proceeding in bankruptcy and during its pendency, and as the statutory law of the state for the settlement of the estates of deceased persons provides for priority of payment of debts due the state out of the estates of deceased persons, therefore while, as the jurisdiction of this court of bankruptcy had attached prior to the death of the bankrupt, this proceeding in bankruptcy will not abate because of the death, yet the estate will be here administered in the bankruptcy court and distributed in pursuance of the laws of the state for the settlement of the estates of deceased persons, and not in pursuance of the provisions of the bankruptcy act, in which event the state would be entitled to the priority of payment asserted.

In so far as the latter contention is concerned, it is not thought to be difficult of solution. While, as contended by solicitors for the state, were this estate of the bankrupt, now deceased, in process of administration in a probate court of the state instead of this court of bankruptcy, the claims of the state on the foregoing obligations would be by that court ordered paid as a third-class claim in preference to all other demands except funeral expenses, the expense of the last sickness of deceased, and that incurred in the administration of the estate, and the wages of servants, for, in such order, the statute law of the state for the purpose of payment out of the estate of a deceased person classifies and commands payment of demands to be made. But, in the present case, this court of bankruptcy, by the act of the bankrupt, and during his life, was applied to, and acquired jurisdiction over his person and estate, to administer it in accordance with the provisions of the bankruptcy act then and now in force as the supreme law of the land. Hence the mandate of that act, and not the laws of the state enacted for the purpose of controlling the disposition of the estates of deceased persons, must be followed by

this court to the end, and the classification and order of payment prescribed in the act must be followed.

Again, it is not thought that provision of the statutes of the state which requires all debts due the state to be paid as a claim of the third class out of the estate of a deceased person is a law of such a general nature or so related to the subject in hand that it can be given weight here in determining the right of the state to priority of payment of its demands arising under the provisions of clause 5, § 64b, of the bankruptcy act above quoted. This question was expressly ruled by the Circuit Court of Appeals for the First Circuit in Re Worcester County, 102 Fed. 808, 42 C. C. A. 637, where Judge Putnam, delivering the opinion of the court, said:

"We are unable to conceive of any priority to which any one may be entitled by the laws of a state, under section 64 of the bankruptcy act, unless it be a priority created by insolvent laws of that character. It is true that priorities are often created by state statutes relating to the administration of estate of deceased persons, and also to proceedings for winding up corporations; but such laws are not of that general character which can be supposed to be within the purview of the provision of the bankruptcy act which is concerned here. Of course statutes touching assignments for the benefit of creditors must be classed with insolvency laws, strictly so called. It is settled that state insolvency laws are not annulled by the enactment of a bankruptcy act, and that the only effect of such enactment is to suspend their operation, so that they became operative again, without re-enactment, when the bankruptcy act is repealed. Butler v. Goreley, 146 U. S. 303 [13 Sup. Ct. 84, 36 L. Ed. 981]."

The important and more difficult question remains: Is the state entitled to its asserted right of priority payment of its demands arising on the foregoing obligations of the bankrupt by reason of the rule of the common law, as in force in this state in aid of its statutes? Section 8014, Gen. St. Kan. 1901, provides:

"The common law as modified by constitutional and statutory law, judicial decisions, and the conditions and wants of the people, shall remain in force in aid of the general statutes of this state; but the rule of the common law, that statutes in derogation thereof shall be strictly construed, shall not be applicable to any general statute of this state, but all such statutes shall be liberally construed to promote their object." Gen. St. 1868, c. 119, § 3.

By force of this statute the common-law rule as modified by constitutional and statutory provisions, judicial decisions, the conditions and wants of the people, is the law of this state. It therefore becomes important to inquire: (1) What the rule of the common law is as to the right of the state to receive priority of payment of its demands from out the estate of insolvent debtors; (2) whether this rule is modified by the conditions on which it was adopted by the statute as the law of this state.

In so far as the right of the general government to priority of payment of its demands is concerned, such right is not based on the rule of the common law, but on express statutory provision. United States v. State Bank of North Carolina, 6 Pet. 29, 8 L. Ed. 308. Hence the decisions arising on the right of the government based on

such statutory provision are not controlling and afford little light here.

, The statutory enactments of many states reserve to such states the same prior right of payment of demand on behalf of the state out of the assets of insolvent debtors. For this reason such cases are not in point here.

There can be no doubt but that at the common law in the mother country debts due the crown were entitled to priority of payment in preference to the rights of other general creditors of the estate, and this whether the debtor was solvent or insolvent. This right of the crown was preserved and enforced by what was styled a "writ of protection" and a "writ of extent," and this right was a prerogative right of the crown. A full discussion of such right and method of its enforcement will be found in Freeholders of Middlesex Co. v. State Bank at New Brunswick, 29 N. J. Eq. 268, affirmed 30 N. J. Eq. 311; State v. Foster, 5 Wyo. 210, 38 Pac. 926, 29 L. R. A. 226, 63 Am. St. Rep. 47; Robinson v. Bank of Darien, 18 Ga. 65.,

The courts of last resort in many of the states have held the state succeeded to this common-law right of the crown to priority of payment of its demands. Maryland, in State v. Bank of Maryland, 6 Gill & J. 205, 26 Am. Dec. 561; Jones v. Jones, 1 Bland, 444, 18 Am. Dec. 327; Orem v. Wrightson, 51 Md. 34, 34 Am. Rep. 286. New York, in Wendell v. Jackson, 8 Wend. 183, 22 Am. Dec. 635; . Lansing v. Smith, 4 Wend. 9, 21 Am. Dec. 89; People v. Herkimer, 4 Cow. 345, 15 Am. Dec. 379. Pennsylvania, in Com. v. Lewis, 6 Bin. 266. Georgia, in Robinson v. Bank of Darien, supra; Seay v. Bank of Rome, 66 Ga. 615.

On the contrary, it has been the uniform holding of the highest judicial tribunals of many states that the states in their sovereign capacities have not succeeded to this prerogative of the crown, and hence the state is not entitled to priority of payment of its demands out of the estate of insolvent debtors unless so declared by the statutes of the state. Freeholders of Middlesex County v. Bank at New Brunswick, supra. South Carolina, in State v. Cleary, 2 Hill, 600; Klinck v. Keckley, 2 Hill, Eq. 250; State v. Harris, 2 Bailey, 598; State v. Foster, supra.

While it has been held by the Supreme Court of this state, in accordance with the general rule, that statutes of limitation do not run against demands of the state unless the state is expressly named in such acts (State v. School District, 34 Kan. 237, 8 Pac. 208; State ex rel. v. Stock, 38 Kan. 154, 16 Pac. 106; Whitney v. Morton County, 73 Kan. 502, 85 Pac. 530), yet the precise question here presented has not been ruled by the courts of this state, but remains an open one.

Turning now to a consideration of the law applicable to the demands presented by the state in this matter, and conceding, for the purpose of argument, although not so deciding, by the rule of the common law in force in this state, aside from the matters presently to be noticed, the state would be entitled to demand priority of payment of its claims against the estate of the bankrupt, yet the ques-

tion remains: Can such priority of payment be accorded the state in this present matter by reason of the laws of the state, as that language is employed in clause 5, § 64b, of the bankruptcy act? The language there employed, "debts owing to any person who by the laws of the states is entitled to priority," was construed in Re Worcester County, supra, to mean such debts as are entitled to priority of payment under the insolvency laws of the state. Accepting this, as I think must be done, as the true interpretation of the language of the act, and construing the word "person" as used in this clause to be inclusive of the state, as was held by the Court of Appeals for this Circuit in Re Western Implement Co., supra, the meaning of the clause as applied to the facts of this particular matter must be held to be: The state is entitled to priority of payment of its demands here presented if it would be entitled to such priority of payment under the provisions of the insolvency laws of this state. The only insolvency law of this state is that in relation to voluntary assignments for the benefit of creditors. This act expressly provides all such assignments "shall be for the benefit of all creditors of the assignor in proportion to their respective claims." This act was passed at the same session of the Legislature at which was adopted the rule of the common law in aid of the statutes, as provided by section 8014, Gen. St. 1901, above quoted.

The question therefore is: Does this act modify the rule of the common law? From an examination of the act it will be found to comprise a general, complete, and comprehensive scheme for the conservation and disposition of the estates of those who assign their property for the benefit of creditors and for the distribution of the proceeds of such estates among all creditors in proportion to their proven demands. That such is the nature and effect of the act is settled by the decisions of the Supreme Court of this state. Hardware Company v. Implement Company, 47 Kan. 423, 28 Pac. 171. While it is the general rule, as contended by counsel for the state, that the rights of the sovereign state remain unaffected by an act unless the sovereign be expressly named therein, yet I am persuaded the necessary and inevitable effect of the act in question was to exclude the sovereign state from demanding that debts owing it by one who makes an assignment in accordance with its provision should receive priority in payment over general creditors of such estates, and that the rule of the common law in this respect, if conceded to be in effect in this state as modified by statute, would not entitle the state to such preferential payment for two reasons: (1) The provision of the act that the assignment "shall be for the benefit of all creditors of the assignor in proportion to their respective claims" is repugnant to the common-law rule contended for by the state in this case; hence that rule must yield to the statute, not alone from the force of necessity, but from the very language of the act adopting it, not in its entirety, but only in aid of the statutes. (2) Because if it should be held the state in its sovereign capacity succeeded to the common-law rule of the prerogative right of the crown to priority of payment over other creditors, even then the effect of such assign-

ment for the benefit of creditors, as is contemplated by the act, has ever been held to cut off and destroy the prerogative right of the crown to priority of payment; hence it was unnecessary to make express mention of the state to reduce its demands against the estate of the assignor to the rank of other creditors.

In Cook County National Bank v. United States, 107 U. S. 445, 2 Sup. Ct. 561, 27 L. Ed. 537, there was presented to the Supreme Court the question whether section 3466, Rev. St. (U. S. Comp. St. 1901, p. 2314), which grants to the United States the right of priority of payment of debts due it, is applicable to its demands against an insolvent national bank in view of the provisions of the national banking act which commands that all creditors of such insolvent bank shall be paid pro rata. Mr. Justice Field, delivering the opinion of the court in that case, said:

"The question is whether, under this broad and general language (section 3466, Rev. St.), the United States, having demands against an insolvent national bank, are entitled to priority of payment out of its assets over other creditors."

After quoting section 5236, Rev. St. (U. S. Comp. St. 1901, p. 3508), the opinion proceeds:

"This section provides for the distribution of the entire assets of the bank, giving no preference to any claim except for moneys to reimburse the United States for advances in redeeming the notes. When this reimbursement is fully provided for, the balance of the assets, as the proceeds are received, is subject to a ratable dividend on all claims proved to the satisfaction of the receiver, or adjudicated by a court of competent jurisdiction. Any sum remaining after the payment of all these claims is to be handed over to the stockholders in proportion to their respective shares. These provisions could not be carried out if the United States were entitled to priority in the payment of a demand not arising from advances to redeem the circulating notes. The balance, after reimbursement of the advances, could not be distributed, as directed, by a ratable dividend to all holders of claims; that is, to all creditors.

"These provisions must be deemed, therefore, to withdraw national banks, which have failed, from the class of insolvent persons out of whose estates demands of the United States are to be paid in preference to the claims of other creditors. The law of 1797, re-enacted in the Revised Statutes, giving priority to the demands of the United States against insolvents, cannot be applied to demands against those institutions. The provisions of that law and of the national banking law being, as applied to demands against national banks, inconsistent and repugnant, the former law must yield to the latter, and is, to the extent of the repugnancy, superseded by it. The doctrine as to repugnant provisions of different laws is well settled, and has often been stated in decisions of this court. A law embracing an entire subject, dealing with it in all its phases, may thus withdraw the subject from the operation of a general law as effectually as though, as to such subject, the general law were in terms repealed. The question is one respecting the intention of the Legislature. And although as a general rule the United States are not bound by the provisions of a law in which they are not expressly mentioned, yet, if a particular statute is clearly designed to prescribe the only rules which should govern the subject to which it relates, it will repeal any former one as to that subject. Daviess v. Fairborn, 3 How. 636 [11 L. Ed. 760]; United States v. Tynen, 11 Wall. 88 [20 L. Ed. 153]."

In that case it was held as Congress had provided a full, complete, and comprehensive scheme for the organization, regulation, and con-

duct of national banks, and the method by which in case of insolvency the affairs of such bank should be settled, and all creditors paid pro rata out of the assets, and as the manner of distribution therein commanded was repugnant to the claimed right of priority asserted by the United States by virtue of the broad and comprehensive language of section 3466, Rev. St., the provision found in the national banking act for the distribution of assets pro rata to all creditors should prevail, although the sovereign was not expressly named in that act. Therefore, following the reasoning there employed in this case, I think it must be held inasmuch as the rule of the common law in its entirety has never been in effect in this state, but that rule only as modified by Constitution, statutes, or judicial decisions has been adopted, and when in aid and not when repugnant to the statutes, and as the Legislature has expressly ordained, in its scheme for the settlement of the estates of insolvent debtors who shall make general assignment for the benefit of creditors, that all creditors shall be paid pro rata, it must be held the common-law rule in this respect, if conceded to be in force in this state, to have been modified by the provision of such act.

Again, while it was undoubtedly within the power of the Legislature to have provided in the act relating to assignments for the benefit of creditors that all demands of the state should be accorded priority of payment out of the proceeds of the estate in the hands of the assignee, as the United States has done by section 3466, Rev. St., yet it must be remembered the common-law right of the state to priority of payment here asserted is not based on any claim of lien reserved by the state on the property of the bankrupt, but is based on the state's succession to the common-law prerogative right of the crown to priority of payment of its demands out of the assets of the estate of the bankrupt in the hands of his trustees in bankruptcy, and that, as the insolvent bankrupt made an assignment of his property for the benefit of creditors under the provisions of the laws of this state in that regard, such assignment and its acceptance by the assignee would have effected such a valid transfer of the bankrupt's property as would have cut off and destroyed any right of the state to priority of payment based on the rule of the common law. For it has ever been held an assignment for the benefit of creditors where the title to the property assigned passed to the assignee, as it does under the assignment laws of this state, such assignment operated to cut off and destroy all rights of creditors to demand priority of payment from out the assets of such estate, including the prerogative right of the crown or sovereign to priority of payment. 2 Tidd's Pr. 1098, 1099; Chitty's Prerogative of the Crown, 281, 284, 285; King (aid of Braddick) v. Watson et al., 3 Price's Exch. Rep. 6; Giles v. Grover et al., 1 Clark & Finley, 72; State v. Bank of Maryland, 6 Gill & J. (Md.) 228, 26 Am. Dec. 561; Middlesex Co. v. State Bank at New Brunswick, supra; State v. Foster, supra.

Therefore, laying aside for future decision by the Supreme Court of the state, or other tribunal, the extremely doubtful and difficult

question whether this state in its sovereign capacity has succeeded to the prerogative right of the crown to demand priority of payment of its claims out of the estates of insolvent debtors within her borders in the absence of some modifying statute, but conceding for the purpose of decision of the present matter the fact that the state, in the absence of any statute to the contrary, would succeed to such prerogative right by virtue of the common law, yet in the very form of its adoption the common law obtains in this state, not to its full extent, but only in aid of the statutes and when not repugnant thereto. Therefore, as the provisions of the act in relation to assignments for the benefit of creditors is the only insolvency law of this state to which resort may be had to determine what persons are entitled under the laws of the state to priority of payment of their demands out of the estate of the bankrupt, and as that act is repugnant to the common-law rule contended for by the state, it must be held the common law in this respect is modified by statute, and the right of the state to priority of payment of its demands in this case is not found by the laws of the state to be reserved to it and enforceable under the provisions of section 64b of the bankruptcy act.

It is therefore ordered the application of the state for an order entitling it to priority of payment of its demands arising on the foregoing obligations be disallowed and denied.

It is further ordered, if the state be so advised by its solicitors, it shall be entitled to prove its demands arising on such obligations as general claims against the estate of the bankrupt in the hands of the trustees.