## In re AGNEW et al.

(District Court, N. D. New York. August 27, 1915.)

1. BANKRUPTCY ⬡25, 402—DEATH OF ALLEGED BANKRUPT—EFFECT.

Under Bankr. Act July 1, 1898, c. 541, § 8, 30 Stat. 549 (Comp. St. 1913, § 9592), declaring that the death of a bankrupt shall not abate the proceedings, but the same shall be conducted in the same manner, so far as possible, as though he had not died, bankruptcy proceedings, once begun, do not abate on the death of the alleged bankrupt, whether the proceedings be voluntary or involuntary, and whether adjudication has been had or not at the time of the death, and the administrator of the deceased bankrupt may file an application for a discharge.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 134, 680; Dec. Dig. ⬡25, 402.]

2. BANKRUPTCY ⬡410—DISCHARGE—APPLICATION—EXTENSION OF TIME IN WHICH TO FILE APPLICATION.

The court, for cause shown, may extend the time, not exceeding 18 months from the adjudication of bankruptcy, in which an application for a discharge may be filed by the administrator of the bankrupt, dying pending bankruptcy proceedings.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 694; Dec. Dig. ⬡410.]

⬡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. BANKRUPTCY ⬄110—EXECUTORS AND ADMINISTRATORS ⬄29—DISCHARGE IN BANKRUPTCY—APPLICATION BY ADMINISTRATOR OF DECEASED BANKRUPT—COLLATERAL ATTACK.

Where an application for a discharge in bankruptcy is presented by an alleged administrator of the deceased bankrupt after one year from the adjudication, an objecting creditor and trustee may not collaterally attack the regularity of the appointment of the administrator, or the order granting an extension of time in which to file the application; and the production of the letters of administration is sufficient to establish the fact of appointment, unless the letters are shown to have been revoked, and the objecting creditor and trustee can only by motion attack the regularity of the letters of administration, or the order granting the extension.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 694; Dec. Dig. ⬄410; Executors and Administrators, Cent. Dig. §§ 177–182, 1411; Dec. Dig. ⬄29.]

4. BANKRUPTCY ⬄408—OFFENSES BY BANKRUPT—FRAUDULENT CONCEALMENT OF PROPERTY—STATUTORY PROVISIONS.

To constitute the offense of knowingly and fraudulently concealing, while a bankrupt, property from the trustee, in violation of Bankr. Act July 1, 1898, c. 541, § 29, 30 Stat. 554 (Comp. St. 1913, § 9613), the concealment must have been by the bankrupt after the filing of a petition or after his discharge, and the property must have been concealed from the trustee, and must have belonged to the estate in bankruptcy, and the concealment must have been knowingly and fraudulently made, and a bankrupt transferring property in fraud of creditors prior to bankruptcy proceedings is not within the statute, though a bankrupt, commencing to conceal his property prior to the filing of a petition, and continuing to conceal the same thereafter and pending bankruptcy proceedings, and failing to disclose the facts to his trustee, but aiding in the concealment by transfer to or through others, knowingly and fraudulently conceals his property while a bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 732–736, 759, 762, 763; Dec. Dig. ⬄408.]

5. BANKRUPTCY ⬄414—OFFENSES BY BANKRUPT—FRAUDULENT CONCEALMENT OF PROPERTY—EVIDENCE.

Evidence that a bankrupt knowingly and fraudulently concealed, while a bankrupt, from his trustee, property belonging to his estate in bankruptcy, in violation of Bankr. Act, § 29, must be clear.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 720–722; Dec. Dig. ⬄414.]

6. BANKRUPTCY ⬄413—DISCHARGE—SPECIFICATIONS OF OBJECTIONS—SUFFICIENCY.

Specifications of objections to a bankrupt's discharge, on the ground that he had knowingly and fraudulently concealed, while a bankrupt, from his trustee, property of his estate, should point out or specify what property was concealed, and when, with some reasonable degree of certainty.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 712–718, 725, 727; Dec. Dig. ⬄413.]

7. BANKRUPTCY ⬄413—DISCHARGE—SPECIFICATIONS OF OBJECTIONS—SUFFICIENCY—"INTENTIONALLY"—"FRAUDULENTLY."

Specifications of objection to a bankrupt's discharge, alleging the making of a false oath by the bankrupt "knowingly and intentionally" including in the schedule of assets a worthless note for $5,000 held as collateral only, with knowledge that it was worthless, and including another note of $9,000, on which $750 had been paid, as worth $9,000, when the same was worthless, or believed so to be by him, and stating the value of a warehouse to be $6,000, when in fact worth only half that sum, and

known to the bankrupt to be worth only half, are insufficient to charge the bankrupt with having "knowingly and fraudulently" made a false oath in relation to any proceeding in bankruptcy, within Bankr. Act, § 29b, for the specifications must state that the oath was "knowingly and fraudulently made," and it must appear that the oath was as to a material matter, and the requirement that the false oath must have been, not only knowingly made, but fraudulently made, is of the essence, and "intentionally" is not the same as "fraudulently," and the meaning of the two is not the same.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 712–718, 725, 727; Dec. Dig. ☞413.

For other definitions, see Words and Phrases, First and Second Series, Intentionally; Fraudulently.]

In Bankruptcy. In the matter of John Agnew and Maude A. Sherman, individually and as composing the firm of Agnew & Co., bankrupts. On objections to application of discharge. Specifications of objection in part adjudged insufficient, and in part adjudged sufficient, and the latter specifications referred to a special master.

Adjudication of the above-named bankrupts having been had, and thereafter, and within 18 months thereafter, said John Agnew having died before his application for a discharge, and an administratrix of his estate having been duly appointed, such administratrix applied for the discharge of said John Agnew after one year, but within the 18 months succeeding such adjudication; leave so to do having been granted by this court. Fred H. Justin, trustee, and the Plattsburgh National Bank, a creditor, filed specifications of objection to such discharge, and the administratrix by exceptions and motion challenges their sufficiency. The question here is as to the sufficiency of such specifications of objection to the discharge in bankruptcy of said John Agnew, now deceased.

Weeds, Conway & Cotter, of Plattsburgh, N. Y., for trustee and objecting creditor.

Agnew & Agnew, of Plattsburgh, N. Y., for administratrix.

RAY, District Judge (after stating the facts as above). The specifications of objection filed to the discharge of John Agnew challenge the validity of the order of the judge permitting the filing of an application for a discharge after one year and within the 18 months succeeding the adjudication, and also the right of the administratrix of a deceased bankrupt, duly adjudicated in his lifetime, to file or present a petition for his discharge, and also deny that Amy C. Agnew, who filed the application for discharge, is administratrix. These specifications of objection also present the following grounds for refusing a discharge, but whether sufficiently or not is the question, viz.:

That said John Agnew, while a bankrupt and unable to pay his debts, committed offenses punishable by imprisonment, as specified in section 29b of the Bankruptcy Act, in that he knowingly and fraudulently concealed and withheld from his trustee certain books, property, etc., and that said John Agnew made a false oath in relation to this bankruptcy proceeding, and on matters material therein, know-

ingly and intentionally, and then sets out details thereof; also that John Agnew, with intent to conceal his financial condition and the condition of the firm, destroyed, concealed, or permitted to be destroyed or concealed, records, vouchers, books, and papers of his said firm, and failed to keep or cause to be kept books of accounts and records from which the true financial condition of himself and his firm might be ascertained, etc.; also that said John Agnew obtained money, credit, and property upon materially false statements in writing made by him to various persons, firms, and corporations, for the purpose of obtaining money, credit, and property, etc.; also that at a time subsequent to the first day of the four months immediately preceding the filing of the petition in bankruptcy said John Agnew transferred, removed, destroyed, or concealed, or attempted to do so, his property, etc., with intent to hinder, delay, and defraud their creditors.

The grounds for refusing a discharge, so far as involved here, may be summarized thus:

*Offenses Punishable by Imprisonment.* (See section 29.) The bankrupt:

(A) Must have knowingly and fraudulently concealed, while a bankrupt, from his trustee, *property* belonging to his estate in bankruptcy.

(B) Must have made a false oath or account in, or in relation to, some (any) proceedings in bankruptcy. (This bankruptcy proceeding.)

*Other Grounds.* (See section 14.) The bankrupt:

(C) Must have, with intent to conceal his financial condition, destroyed, concealed, or failed to keep books of account or records from which such financial condition might be ascertained.

(D) Must have obtained money or property *on credit* upon a materially false statement *in writing* made by him to any person or representative for the purpose of obtaining *credit* from such person.

(E) Must have, at some time subsequent to the first day of the four months immediately preceding the filing of the petition, transferred, removed, destroyed, or concealed, or permitted this to be done, some of his *property,* with intent to hinder, delay, or defraud his creditors.

[1-3] Bankruptcy proceedings, once commenced, do not abate on the death of the alleged bankrupt, whether the proceeding be voluntary or involuntary, and whether adjudication has been had, or not, at the time of such death. Bankr. Act, § 8. "The death or insanity of a bankrupt shall not abate the proceedings, but the same shall be conducted and concluded in the same manner, so far as possible, as though he had not died or become insane." In re Hicks (D. C.) 6 Am. Bankr. Rep. 182, 107 Fed. 910; Shute v. Patterson (C. C. A., 8th Circuit) 17 Am. Bankr. Rep. 99, 147 Fed. 509, 78 C. C. A. 75; In re Parker, 1 Am. Bankr. Rep. 615; In re Miller (D. C.) 13 Am. Bankr. Rep. 345, 133 Fed. 1017; Collier on Bankruptcy (10th Ed.) 249, 250. Therefore the administratrix, if there be one, properly filed the application for a discharge, and the judge had the right, on cause shown, to extend the time in which to file same, but not exceeding 18 months from the adjudication. If it be shown that no letters of administration issued to the person who, as administratrix, filed the application

for a discharge, the proceedings for a discharge will fall, of course; but such appointment, as to its regularity, etc., cannot be attacked in this proceeding. The production of the letters will be sufficient, and establish the fact, unless it be shown they have been revoked. If it be shown that no reason whatever was presented to the judge for extending beyond one year the time for filing the application for a discharge, the order might be void, and vacated on motion. The objecting creditor and trustee have the right to present these questions, however; but the order granting the extension cannot be attacked in this proceeding before the special master or judge, nor can the regularity or validity of the letters of administration. If, as alleged, Amy C. Agnew, who applied for the extension, was not a person entitled to apply for such an order, it can be vacated on motion, but cannot be attacked collaterally; the order having been made and acted upon. It will be incumbent on her to produce and put in evidence the letters of administration. As to the other specifications of objection, they must point out and allege facts, not mere conclusions.

[4-6] To constitute the punishable offense of having knowingly and fraudulently concealed while a bankrupt from his trustee *property* belonging to his estate in bankruptcy, such concealment must have been by the bankrupt after the filing of a petition against him, while a bankrupt, or after his discharge, and the property must have been concealed *from the trustee,* and such property must have belonged to the estate in bankruptcy. The concealment must be knowingly and fraudulently done. The evidence must be clear. It is evident that the specifications of objection should point out or specify what property was concealed, and when, with some reasonable degree of certainty. In re Meyers (D. C.) 5 Am. Bankr. Rep. 4, 105 Fed. 353; In re Hyman (D. C.) 3 Am. Bankr. Rep. 169, 97 Fed. 195; In re Webb (D. C.) 3 Am. Bankr. Rep. 386, 98 Fed. 404. If a person, *before a petition in bankruptcy* is filed by him or against him, in contemplation thereof, puts property out of his hands, intending to put it beyond the reach of his creditors and retain title, so that at some future time he may obtain it or reclaim it, and he commences such concealment prior to the filing of a petition, and continues it thereafter and during the pendency of such bankruptcy proceedings, failing to disclose the truth to his trustee, and then aids in its concealment by transfer to or through others, I am of opinion he has knowingly and fraudulently concealed, while a bankrupt, from his trustee, property belonging to his estate in bankruptcy. These specifications, in substance and somewhat in detail, charge this, and I think them sufficient in these regards. In re Quackenbush (D. C.) 102 Fed. 282; In re Bemis (D. C.) 104 Fed. 672; U. S. v. Cohen (C. C.) 142 Fed. 983; In re Jacobs et al. (D. C.) 147 Fed. 797; In re James (D. C.) 175 Fed. 894; James v. Stone, 181 Fed. 476, 104 C. C. A. 224. It cannot be material that the property really owned by the bankrupt was transferred in fraud of creditors for the benefit of the bankrupt himself prior to the institution of the proceedings. The trustee may reclaim such property, even if the bankrupt himself could not have done so.

[7] The proof may fail to establish the charge; but, if all the facts

and acts alleged are *proved,* the conclusion will inevitably follow. It is expressly alleged that the acts specified were done by John Agnew himself, and that they were fraudulently done. Coming to the specifications of objection that the bankrupt John Agnew made false oaths in relation to some proceeding in bankruptcy, the facts alleged are that, in his schedules filed of the assets and liabilities of the firm of Agnew & Co., he listed as worth $5,000 a note dated June 15, 1908, made by one William Marshall, for $5,000, payable to the order of one Yerrington; that such note had not been protested, or protest waived; that the indorser was not liable thereon, and the maker of such note had been dead several years, and was and had been insolvent for some years prior to his death, and left no estate sufficient to pay such note; that such note was worthless, and known so to be for years by Agnew; that Agnew & Co. held same as collateral security to a note given Agnew & Co. by Yerrington and unpaid; also that said Agnew included in said schedules, verified by said John Agnew, as worth $9,000, a note dated September 15, 1909, due on demand, made by one Yerrington for $9,000, payable to the order of Agnew & Co., on which $750 had been paid; that when such schedules were made said note was worthless, *or* believed so to be by said John Agnew and his said firm; also that in the schedules was included the warehouse of Agnew & Co., valued at $6,000, and that said warehouse was not worth that sum when the schedules were sworn to, and that "John Agnew well knew it was not, and that he was giving it a false and fictitious valuation; that said warehouse was not at that time worth one-half the valuation placed thereon in said schedules."

The sum and substance of these specifications of objection, charging the making of a false oath, is that Agnew "knowingly and intentionally" included in the schedules of assets of the firm a worthless note for $5,000 held as collateral only, knowing it to be worthless; that he also included another note of $9,000, on which $750 had been paid, as worth $9,000, when same "was worthless, or believed so to be by said John Agnew and his said firm," and that he also stated in such schedules the value of the warehouse of the firm to be $6,000, when in fact worth only half that sum, and known to said Agnew to be worth only half the sum of $6,000. The requirement of the statute (section 29b) is that the bankrupt must have "knowingly and *fraudulently*" made "a false oath or account in, or in relation to, any proceeding in bankruptcy." This, of course, refers to the pending proceeding, and not some other bankruptcy proceeding. The specifications of objection must state that the oath was "knowingly and *fraudulently*" made. In re Mayer (D. C.) 195 Fed. 571, 28 Am. Bankr. Rep. 342; In re Bryant (D. C.) 104 Fed. 789, 5 Am. Bankr. Rep. 114; In re Salsbury (D. C.) 113 Fed. 833, 7 Am. Bankr. Rep. 771; In re Cohen (D. C.) 149 Fed. 908, 18 Am. Bankr. Rep. 84; In re Beebe (D. C.) 116 Fed. 48, 8 Am. Bankr. Rep. 597. This must be the *charge* in the specifications, and the oath made must be as to a material matter, which must appear from the specifications of objection. Says Collier (10th Ed., page 343):

"The analogy of this objection to a crime usually compels strict pleading and even stricter proof."

The requirement that the false oath must have been, not only knowingly made, but "fraudulently" made, is of the very essence of the objection. "Intentionally" is not the same as "fraudulently." The meaning of the two words is not the same. The one word is not a synonym of the other. See Soule's Revised Dictionary of Synonyms, "Fraudulent" and "Intentional."

Says Remington on Bankruptcy, vol. 3, 2d Ed., p. 2405, § 2596, discussing opposition to discharge:

"When the act alleged is the commission of one of the offenses prohibited by the Bankrupt Act, it must be alleged to have been done knowingly and fraudulently."

Many cases are cited. In short, there must have been an intent or purpose to mislead, deceive, and defraud the creditors or some of them. See, also, In re Patterson (D. C.) 121 Fed. 921, 10 Am. Bankr. Rep. 371; In re Pierce (D. C.) 103 Fed. 64, 4 Am. Bankr. Rep. 554; In re Kaiser (D. C.) 99 Fed. 689. Errors or mistakes in making up schedules are not infrequent, and so errors in estimating values are of frequent occurrence.

I think the specifications of objection, so far as they charge or attempt to charge the taking of a false oath, are clearly insufficient, and the objections to the sufficiency thereof are sustained. The other specifications of objection are held sufficient and same will be referred to a special master under the rule.

So ordered.