## STRANE v. SCHAEFFER et al.

### No. 10724.

Circuit Court of Appeals, Eighth Circuit.

Jan. 13, 1937.

John Swinland, of Duluth, Minn., for appellant.

Courtney & Courtney, of Duluth, Minn., for appellees.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

This appeal is taken by Archibald J. Strane, bankrupt, to reverse an order of the District Court of Minnesota, which sustained certain specifications of objection to his discharge in bankruptcy and denied discharge.

It appears that in February, 1933, the bankrupt was and long had been working as a teacher on a salary (about $2,000 per year), and that he was insolvent, in that

he owed his sister about a thousand dollars and moderate amounts in household bills to various persons, and had no assets above his exemptions. He left his automobile standing on the street without tail lights, and one Schaeffer ran into it and suffered personal injury and property damage, for which Schaeffer brought suit in tort, and, before he had obtained a judgment, garnisheed the bankrupt's salary. Although the bankrupt was insolvent in the bankruptcy sense, no contract creditor had ever sued him and none was "pushing" him. But the bankrupt denied that he had wronged Schaeffer or owed him anything, and with the sole intent of preventing Schaeffer from further attaching his salary by garnishment before trial or judgment, he gave an assignment of the salary which he expected to earn in the next sixty days to his wife's sister. The assignment was made and filed in conformity with section 9364, Mason's Minnesota Statutes 1927, and, as found by the court below, was without consideration. The wife's sister collected $328.32 under the assignment and returned $300 of the amount to the bankrupt's wife and it was used for living expenses of the family.

Schaeffer afterwards got a verdict and judgment for damages, and ten minutes after the judgment became final the bankrupt filed his voluntary petition in bankruptcy.

Schaeffer and the attorney who had appeared for the bankrupt in the damage suit and had not been paid filed specifications of objection to the bankrupt's discharge numbered 1 to 8, and the referee, having heard the testimony, reported that he was of the opinion that specifications 1, 2, and 5 had been sustained and that the remaining specifications had not been sustained, and he, therefore, recommended that the discharge be denied. The trial court approved and confirmed the report without opinion and denied the discharge.

1. The first specification of objection to discharge was to the effect that the bankrupt's assignment of his future salary without consideration to his wife's sister constituted a transfer of property with intent to defraud creditors, within section 14b (4) of the Bankruptcy Act, as amended (11 U.S.C.A. § 32 (b) (4): "The judge shall hear the application for a discharge * * * and discharge the applicant, unless he has * * * (4) * * * transferred * * * any of his property, with intent to hinder, delay, or defraud his creditors."

It is insisted for the bankrupt that his assignment of the salary he expected to earn by personal services in the future was not a fraudulent "transfer of any of his property" within the quoted provision, and we have not been cited to any construction of the Bankruptcy Act by the federal courts directly applicable to the question. We find no decision holding that such an assignment of pay to be earned by personal services in the future is a fraudulent "transfer of property" amounting to an act of bankruptcy. Section 3a, as amended (11 U.S.C.A. § 21 (a). Or that it is a bar to discharge in bankruptcy. Section 14b (11 U.S.C.A. § 32 (b). On the other hand, the expressions of the Supreme Court in Local Loan Company v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 698, 78 L.Ed. 1230, 93 A.L.R. 195, preclude any conclusion that the assignment of such pay which has not accrued but which is merely expected to be earned in the future is a fraudulent "transfer of property" within the meaning of section 3a or section 14b of the act. In that case the question was whether an assignment of future earned wages constituted a lien which "would not be affected" by adjudication in bankruptcy (section 67d, as amended (11 U.S.C.A. § 107 (d), and the court, deciding in the negative, gave full consideration to the nature of the act of assigning future earned wages as related to bankruptcy. It was observed:

"The earning power of an individual is the power to create property; but it is not translated into property within the meaning of the Bankruptcy Act until it has brought earnings into existence. * * *

"When a person assigns future wages, he, in effect, pledges his future earning power. The power of the individual to earn a living for himself and those dependent upon him is in the nature of a personal liberty quite as much if not more than it is a property right. To preserve its free exercise is of the utmost importance, not only because it is a fundamental private necessity, but because it is a matter of great public concern. From the viewpoint of the wage-earner there is little difference between not earning at all and earning wholly for a creditor. Pauperism may be the necessary result of either."

When it is thus established that the wages which a man expects to earn in the

future are not property upon which he can impress a lien which will survive adjudication in bankruptcy; that "the power of an individual to earn a living for himself is in the nature of a personal liberty quite as much as, if not more than, it is a property right"; that "the earning power of an individual is not translated into property within the meaning of the bankruptcy act until it has brought earnings into existence"—we think it follows that the making of the assignment by the bankrupt in this case, assigning pay which he expected to earn in the coming sixty-day period, would not be a bar to his discharge in bankruptcy.

We need not consider whether there was a fraudulent conveyance under the Minnesota statute (sections 8475, 8478, 8481, 8483, Mason's Minnesota Statutes 1927), nor the remedies available on account of such statute.

It not appearing from any bankruptcy decision cited that such assignments have been heretofore deemed acts of bankruptcy or a bar to discharge, we determine that question only in the negative.

2. The second specification of objection to discharge was similar to the first and required the same ruling.

3. The gist of specification of objection to discharge No. 5 was that the bankrupt committed an offense punishable under the bankruptcy act in that "he listed * * * his sister * * * to be a creditor" in his verified schedule "A–3," accompanying his voluntary petition in bankruptcy, "in the amount of $1,900.00, whereas she was a creditor for only $929.97." The alleged offense was a violation of section 29b (2) of the act, as amended (11 U. S.C.A. § 52 (b) (2): "A person shall be punished by imprisonment * * * upon conviction of the offense of having knowingly and fraudulently * * * (2) made a false oath or account in, or in relation to any proceeding in bankruptcy."

The specification was fatally defective because there was no allegation that the listing of the sister's debt in a wrong amount was done by the bankrupt "knowingly and fraudulently." In re Ishear (D. C.Fla.) 16 F.(2d) 285; In re Agnew (D.C. N.Y.) 225 F. 650; In re Mayer (D.C.N. Y.) 195 F. 571; In re Taplin (D.C.Iowa) 135 F. 861; In re Mudd (D.C.Mo.) 105 F. 348; In re Patterson (D.C.N.Y.) 121 F. 921; In re Greer (D.C.Ky.) 248 F. 131; In re Beebe (D.C.East.Dist.Pa.) 116 F. 48; 7 Corpus Juris 386; 1 Collier on Bankruptcy (13th Ed.) 498, 499, 500, 501; 2 Loveland on Bankruptcy (4th Ed.) § 652.

The only testimony concerning the debt due the sister and the amount of the same was that elicited from the bankrupt. He explained that he originally listed the debt in the larger amount because in arriving at the amount he had, through forgetfulness, failed to give credit for two of the payments he had made. He made the correction of his own volition [Norris v. United States (C.C.A.8) 86 F.(2d) 379, filed November 19, 1936], and there was no proof that the mere listing of the debt in Schedule A in an erroneous amount was by the bankrupt intended to or that it could operate to defraud. The court erred in sustaining specification of objection numbered five.

Reversed, with directions to discharge the bankrupt.