## HARRIS, ADMINISTRATOR, *v.* ZION'S SAVINGS BANK & TRUST CO.

No. 268. Argued December 17, 1942.—Decided January 11, 1943.

*Mr. J. D. Skeen,* with whom *Mr. E. J. Skeen* was on the brief, for petitioner.

*Mr. Hadlond P. Thomas* for respondent.

Mr. Justice Roberts delivered the opinion of the Court.

December 20, 1937, Anna L. Harris filed her petition for relief under § 75 of the Bankruptcy Act[1] in the District Court for Utah. She made an offer of composition and, while this offer was pending, she died. January 16, 1939, the bankruptcy court ordered the proceeding abated because of her death. March 30, 1939, the petitioner was appointed administrator of her estate.

Thereafter the respondent instituted a foreclosure proceeding upon a mortgage on real estate of the decedent, obtained a judgment, and, August 1, 1939, purchased the mortgaged premises at foreclosure sale and received a sheriff's certificate.

February 13, 1940, two days before the period of redemption expired, the petitioner, as administrator, secured leave from the probate court to apply, as the decedent's personal representative, for an order reviving the debtor proceedings. The probate court's decree was stayed pending an appeal to the Supreme Court of Utah. Notwithstanding the stay, the petitioner applied to the bankruptcy court for a revivor.

[1] 11 U. S. C. § 203.

The Utah Supreme Court reversed the decree of the probate court, holding that, under the probate code, the court had no authority to authorize the administrator to petition the federal court under § 75.[2]  This court granted certiorari to review the judgment [3] but, after hearing, dismissed the writ on the ground that the decision rested on an adequate non-federal ground.[4]

Pending hearing in this court, the petitioner, on September 18, 1940, lodged with the clerk of the bankruptcy court an amended petition to be adjudged a bankrupt under subsection (s) of § 75.  The court ordered that the paper be not filed and also ordered that the petitioner show cause why his revivor petition should not be dismissed.  August 29, 1941, the respondent moved to strike both the original and amended petition.  September 30, 1941, the district judge entered an order dismissing the administrator's petition to revive and rejecting the amended petition.

October 10, 1941, the petitioner sought leave of the probate court to appeal from the bankruptcy court's order of dismissal and rejection.  The prayer was denied, and the court held that the petitioner should not be authorized to appeal.  The petitioner, nevertheless, appealed to the Circuit Court of Appeals, which affirmed the District Court's action.[5]

Subsection (c) of § 75 provides: ". . . a petition may be filed by any farmer" for the extension and composition of his debts.  Subsection (r) declares: "For the purpose of this section . . . the term 'farmer' . . . includes the personal representative of a deceased farmer; . . ."

The question is whether an administrator may, in his representative capacity, initiate such proceedings without

---

[2] *In re Harris' Estate,* 99 Utah 464, 105 P. 2d 461.

[3] 312 U. S. 670.

[4] *Harris* v. *Zion's Savings Bank & Trust Co.,* 313 U. S. 541.

[5] 127 F. 2d 1012.

leave of the court which appointed him and has jurisdiction over him, or may do so where, as here, he has applied for leave and been denied it. The importance of this question, and a diversity of views amongst the federal courts,[6] led us to grant certiorari.

Put another way, the question is: if the law of a state prohibits an administrator from dealing with the real estate, or conditions his power so to do, did Congress intend to override that law and confer upon this mandatory of state power a privilege at war with the law of his official being? We must meet that question in this case, for the Supreme Court of Utah has told us that, under the law of that State, the petitioner has no such power. If such he possesses, it derives from a law which overrides the law of the petitioner's official creation.

Laying aside any issue of constitutional power, the question remains whether Congress intended so to override the law of a state and confer on the state's appointee, as *persona designata,* a function to be exercised not for the deceased farmer, not for the decedent's estate, the entity he represents under state law, not for the heirs who inherit the realty, but in a vacuum?

When we reflect that the settlement and distribution of decedents' estates, and the right to succeed to the ownership of realty and personalty are peculiarly matters of state law; that the federal courts have no probate jurisdiction and have sedulously refrained, even in diversity cases, from interfering with the operations of state tribunals invested with that jurisdiction, we naturally incline to a construction of § 75 consistent with these principles. We think the beneficent purpose of the legislation will not be defeated by such a construction.

---

[6] Compare *In re Buxton's Estate,* 14 F. Supp. 616; *In re Reynolds,* 21 F. Supp. 369; *Lemm* v. *Northern California National Bank,* 93 F. 2d 709; *Hines* v. *Farkas,* 109 F. 2d 289.

The section is a manifestation of the enlarged conception of the bankruptcy power as extending not alone to a seizure of an insolvent debtor's assets in the interest of an impartial application of them to his creditor's demands, but also as a means of relieving his distress and rehabilitating him financially while rendering his creditors all for which they may reasonably hope.[7]

So the opportunity of resort to § 75 enures not to creditors but to the debtor. His voluntary action, not theirs, determines whether the law shall be invoked. Congress extended him a privilege which he could exercise or renounce. By the provision that the term "farmer" should include a personal representative, Congress extended that privilege to an administrator. But, clearly, if that functionary elects not to avail himself of the privilege, the section is, as to him, inoperative. Moreover, if his election depends, under the law of his being, not alone on his choice but upon the exercise of the choice of his master, the state which gave him official life, and under whose tutelage he is, then the door of the bankruptcy court is open to him only when that choice has been exercised in the only way he can exercise it.

In this view, Congress has extended the benefits of the act only to administrators who can lawfully elect to avail of them. Thus conflict between federal and state power is avoided and the two are accommodated.

The opinion of the Supreme Court of Utah points out some of the many inconsistencies and difficulties an opposite conclusion would entail. Under the law of the State, realty descends directly to the heirs. The administrator does not represent them. In resorting to § 75 he

---

[7] *Local Loan Co.* v. *Hunt*, 292 U. S. 234, 244; *Continental Illinois National Bank & T. Co.* v. *Chicago, R. I. & P. Ry. Co.*, 294 U. S. 648, 667–675; *United States* v. *Bekins*, 304 U. S. 27, 47; *Wright* v. *Union Central Life Ins. Co.*, 304 U. S. 502, 514; *Wright* v. *Union Central Life Ins. Co.*, 311 U. S. 273, 279.

may, or may not, be acting in their true interests. The law of the State demands the speedy settlement of the estate. If, independently of that law, the administrator may apply under § 75, it may well happen that this state policy will be nullified. In other states, an administrator may succeed to the realty absolutely or in such measure and for such purpose that no state policy would be contravened by resort to § 75. But, in any case, the interests of those entitled to inherit ought to be considered before choice of action is determined. The probate court, not the bankruptcy court, is the appropriate forum for weighing the respective benefits or detriments to those who share in the equity of the decedent's estate.

We cannot accept the view that § 8 of the Bankruptcy Act [8] governs. That provision was part of the Act of 1898 and looked only to proceedings wherein title to the assets was transferred from the bankrupt as of the date of petition and vested in a trustee, and wherein the assets were to be liquidated promptly and the proceeds distributed amongst creditors. In other words, the purpose and effect of the proceeding in bankruptcy and that in the probate court were the same. Under § 75 they are or may be at war, the one preventing the liquidation which is the chief aim of the other. In other respects § 8 is inapplicable. Why, in a case like this, should the heirs, the owners of the equity in real estate, be made parties against their will? [9]

Congress, when the matter has come to its attention, has expressly recognized that if a moratorium proceeding such as this is to be brought or revived by an administrator, he ought to obtain leave from the probate court. So § 74, as amended, provides.[10] We think the same intent should be implied as to § 75.

---

[8] 11 U. S. C. § 26.

[9] See *Shute* v. *Patterson*, 147 F. 509.

[10] 11 U. S. C. § 202.

We believe that it was with these considerations in mind that this court adopted Order 50 (9) of the General Orders in Bankruptcy.[11] That order provides that the personal representative of a farmer shall annex to his petition filed under § 75, amongst other things, a copy of the order of the probate court authorizing him to file the petition. The court below thought the General Order applicable and felt bound to apply it. It is suggested that this portion of the Order is void as running counter to the clear mandate of the statute. And so it would be if the Act conferred upon the administrator the right, notwithstanding state law, to invoke the bankruptcy powers. But the rule comports with what we have endeavored to show is the natural and reasonable construction of § 75. If the state law permits resort to the remedy afforded by the section, no difficulty will be created by requiring the obtaining of such an order. If it forbids, then no conflict between the policies of state and nation will arise.

The judgment is

*Affirmed.*

MR. JUSTICE DOUGLAS, dissenting:

Sec. 75 (r) includes "the personal representative of a deceased farmer" within the definition of "farmer" as that term is used in the Act. Sec. 75 (n) provides that in these proceedings "the jurisdiction and powers of the courts, the title, powers, and duties of its officers, the duties of the farmer, and the rights and liabilities of creditors, and of all persons with respect to the property of the farmer . . . shall be the same as if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered on the day when the farmer's petition, asking to be adjudged a bankrupt" was filed. Since that provision relates to the "jurisdiction

[11] General Orders in Bankruptcy of January 16, 1939, 305 U. S. 681, 11 U. S. C. A. following § 53.

and powers" of the bankruptcy court as well as to the "rights and liabilities" of creditors and "of all persons" with respect to the property, I do not see how we can escape the conclusion that it incorporates § 8 of the Bankruptcy Act. Practically identical provisions in old § 74 (m), dealing with compositions and extensions, were held to have that effect. *In re Morgan,* 15 F. Supp. 52. Cf. *Benitez* v. *Anciani,* 127 F. 2d 121. The function and purpose of § 74 and § 75 are comparable. No reason is apparent why a different result should obtain under § 75. Sec. 8 of the Bankruptcy Act states that death of a bankrupt "shall not abate the proceedings, but the same shall be conducted and concluded in the same manner, so far as possible, as though he had not died." That section "makes no exception or qualification—after the proceedings have been commenced they are not to be abated by death." *Hull* v. *Dicks,* 235 U. S. 584, 588. It has long been considered mandatory. *Shute* v. *Patterson,* 147 F. 509; 1 Collier, Bankruptcy (14th ed.) § 8.02. On death of a bankrupt where his personal representative succeeds to the personalty and his heirs to the realty, the proper procedure is to make them parties. *Shute* v. *Patterson, supra,* p. 512; *Benitez* v. *Anciani, supra,* p. 125. And see *In re Schwab,* 83 F. 2d 526. And the death of a bankrupt does not prevent his discharge (Collier, *loc. cit.*) at the instance of the administrator. *In re Agnew,* 225 F. 650.

If this had been an ordinary bankruptcy case, there can be no doubt that the personal representative of this decedent would have been entitled to come in, that the heirs could have been joined, and that a discharge could have been obtained, provided the requirements of § 14 were met. The fact that the proceeding is under § 75 should not make a difference. Congress has specifically stated that a "personal representative" of a farmer may employ the machinery of § 75. The offer of composition made by the decedent before her death might or might

not have been accepted. But even though it were rejected, subsection (s) affords an alternative form of relief, one benefit of which is a discharge. § 75 (s) (3); *Wright v. Union Central Life Ins. Co.*, 311 U. S. 273. I think it clear that § 75 was designed to afford to the estate the opportunity to obtain these benefits. Those benefits may be just as considerable as they would be in ordinary bankruptcy. The fact that the heirs would be held at bay is no more significant in this instance than it is in other applications of § 8 of the Bankruptcy Act. To be sure, title to the property vests in the trustee in ordinary bankruptcy. But that circumstance has no relevancy to the scope of the jurisdiction of the bankruptcy court under § 75 which is in issue here and which we recently stated was "exclusive," carrying with it "complete and self-executing statutory exclusion of all other courts." *Kalb v. Feuerstein*, 308 U. S. 433, 443. Furthermore, Congress has not made participation of the personal representative dependent on authorization from the state probate court. Under old § 74 it did. Thus § 74 as amended by the Act of June 7, 1934 (48 Stat. 922, 11 U. S. C. 202a), an Act which also contained certain amendments to § 75 (48 Stat. 924, 925), included "the personal representative of a deceased individual for the purpose of effecting settlement or composition with the creditors of the estate: *Provided, however,* That such personal representative shall first obtain the consent and authority of the court which has assumed jurisdiction of said estate, to invoke the relief provided" by that Act. No such qualification appears in § 75. Its absence there and its presence in § 74 clearly indicate that, where Congress wished to curtail the power of bankruptcy courts over estates of decedents and to make the participation of a personal representative dependent on authorization from the state probate court, it said so. The view I urge would of course result in a collision between the Bankruptcy Act and state probate law. But that is no

more important here than was the collision in *Kalb* v. *Feuerstein, supra.* In this case, as in other situations (*In re Devlin,* 180 F. 170, 172) it is the Bankruptcy Act, not local probate law, which must control the administration of the estate. The bankruptcy power is supreme. Sec. 8 is a valid exercise of that power. The result is that General Order 50 (9) must give way insofar as it is inconsistent with this result. For those rules are intended merely "to execute the act" (*West Co.* v. *Lea,* 174 U. S. 590, 599), not to "authorize additions to its substantive provisions." *Meek* v. *Centre County Banking Co.,* 268 U. S. 426, 434.

MR. JUSTICE BLACK and MR. JUSTICE MURPHY join in this dissent.