### In re BUXTON'S ESTATE.
#### No. 7092.

District Court, E. D. Illinois.

Feb. 18, 1936.

J. E. Dazey, of Findlay, Ill., for debtor.

Robert P. Shonkwiler, of Monticello, Ill., for Joint Stock Land Bank of Monticello.

Asa S. Chapman, of Champaign, Ill., for Mutual Ben. Life Ins. Co.

Ray Meeker, of Sullivan, Ill., conciliation commissioner acting in said cause.

WHAM, District Judge.

The debtor-petitioner, Mike L. Buxton, administrator of the estate of George Frederick Buxton, deceased, hereinafter referred to as "debtor," on the 1st day of October, 1935, filed his petition in this court as the personal representative of said

George Frederick Buxton, a deceased farmer, seeking relief under section 75 of the Bankruptcy Act, as amended (11 U.S.C.A. § 203). The petition was approved and referred to the proper conciliation commissioner.

On December 19, 1935, the conciliation commissioner reported back to this court all proceedings under the statute concluded before him and reported debtor's failure to secure an acceptance of his offer of composition or extension of the debts of the deceased farmer and attached a copy of said offer to his report.

The said George Frederick Buxton died seized of approximately 500 acres of real estate. The estimates of values shown on the schedules filed by the debtor indicate that each tract of the land is worth no more than the principal of the obligation against it. Against one tract of 146⅔ acres the Mutual Benefit Life Insurance Company holds a mortgage securing a loan for the principal sum of $14,600. Against another tract of 43⅔ acres the same company holds a mortgage to secure a loan in the principal sum of $4,000. Both mortgages being in default in March, 1933, George Frederick Buxton, mortgagor, who was then living, assigned to the said company the lease contract by which he had leased said premises to George W. Buxton and Ora Buxton, and said lessees thereafter attorned to said company in writing and paid rental to said company, which attornment was in effect when debtor's petition herein was filed. Against the remaining tract of real estate scheduled by debtor as containing 280 acres, the Illinois Joint Stock Land Bank of Monticello, a corporation, holds a mortgage to secure a loan in the principal sum of $24,000 which has been in default since 1932. A decree foreclosing this mortgage was obtained by the mortgagee in the circuit court of Moultrie county in August, 1935, the land was advertised for sale under the decree on October 30, 1935, but the sale was restrained by an order of this court in these proceedings. By the foreclosure decree, the sum of $29,526.42 was established as the amount of the lien against this tract.

On December 19, 1935, the debtor was notified by this court that the conciliation commissioner had filed his report and that the proceedings would be dismissed as a matter of course unless cause to the contrary were shown by the debtor on or before January 9, 1936.

Both the said secured creditors thereafter filed motions to dismiss the proceedings, while the debtor filed answer to the show cause order and replies to said motions.

The debtor has subsequently presented his petition to be adjudicated a bankrupt under the provisions of subsection (s), section 75, of the Bankruptcy Act, as amended (11 U.S.C.A. § 203(s).

The case has been submitted to the court on the admitted facts of record and the facts admitted in writing in the various motions and answers, to determine whether the proceedings herein under section 75 should now be dismissed or whether the debtor should now be adjudicated a bankrupt under subsection (s) of section 75; also to determine the status in the bankruptcy proceedings of the various tracts of land scheduled by the debtor if adjudication in bankruptcy is permitted. The secured creditors also attack the constitutionality of subsection (s) of section 75.

Three principal grounds are urged as requiring the dismissal of the proceedings at this stage: First, that the debtor's offer of composition and extension made before the conciliation commissioner was wholly insufficient and inadequate to comply with the terms of section 75 and cannot afford a basis for adjudication under said subsection (s). Second, that under the statutes of Illinois relating to administrators and administration of estates an administrator is without power to enter into bankruptcy under section 75 of the Bankruptcy Act in his official status as administrator, even though said section has opened the doors of the bankruptcy courts to personal representatives of deceased persons. Third, the asserted unconstitutionality of subsection (s).

In order to consider the sufficiency of the first ground for dismissal urged by the creditors, the two paragraphs from debtor's composition or extension proposal now under attack that contain the proposals to the Mutual Life Insurance Company and to the Illinois Joint Stock Land Bank are quoted:

"Second: To the Mutual Benefit Life Insurance Company, a corporation of Newark, New Jersey, assignees of Trevett-Mattis Banking Company, a corporation of Champaign, Illinois, he will pay the principal of the said loan to the amount of Nineteen Thousand Dollars, ($19,000.00) as promptly as a loan can be obtained from

the Federal Land Bank of St. Louis, Missouri.

"Third: To the Illinois Joint Stock Land Bank, a corporation of Monticello, Illinois, he will pay the principal of the said loan of Twenty-Four Thousand Dollars ($24,000.00), as promptly as the loan can be obtained from the Federal Land Bank of St. Louis, Missouri."

Neither in these paragraphs nor in any other part of the proposal does it appear that the Federal Land Bank had agreed to make a loan or loans upon the land belonging to the estate in the amounts necessary to carry out the debtor's proposal or in any other amount whatsoever or that debtor had any assurance that any loan would be obtainable. It does not even so much as appear that an application for a loan had been made to the Federal Land Bank of St. Louis, Mo. A proposal so indefinite could not be accepted by the creditors with any assurance that its terms would ever be consummated. Had such a proposal been accepted by the creditors, it could not have been confirmed by the court since the court could not, as required by the statute, be satisfied "that (1) it includes an equitable and feasible method of liquidation for secured creditors and of financial rehabilitation for the farmer;" and that (2) "it is for the best interests of all creditors," (Bankr.Act, § 75(i), 11 U.S.C.A. § 203(i) since the court could not know whether the loans would ever be procured from the Federal Land Bank and the creditors paid in accordance with the proposal. The proposal here would seem to have the same fatal weaknesses that appear in portions of the proposal that was condemned as insufficient by the Circuit Court of Appeals for the Seventh Circuit in the case of In re Borgelt et al., 79 F.(2d) 929, affirming the District Court whose opinion is published in 10 F.Supp. 113. In that case the District Court said, "The proposal should be sufficiently definite and certain that the creditors may understand what it amounts to. A proposal conditioned upon the ability of the debtor to borrow the amount proposed certainly would not be sufficient." 10 F.Supp. 113, at page 116. I agree with those statements. Clearly, the proposal in this case was too indefinite in terms to be valid.

■ The proposal being invalid and insufficient, the debtor cannot be adjudicated a bankrupt under subsection (s), since by the provisions of the subsection such adjudication must be founded on the failure of the farmer "to obtain the acceptance of a majority in number and amount of all creditors whose claims are affected by a composition and/or extension proposal." This obviously means a valid proposal that is both definite and understandable and represents a bona fide effort at securing relief under the provisions of section 75 that precede said subsection (s). A valid proposal not having been tendered, failure to obtain the acceptances necessary to consummate a composition or extension cannot be shown and the statutory condition precedent to a lawful adjudication under said subsection (s) cannot be met by the debtor.

May an administrator of the estate of a deceased farmer appointed under the law of Illinois be lawfully adjudicated a bankrupt under said subsection (s) in view of the fact that said subsection opens the door of bankruptcy thereunder to "any farmer," and that subsection (r) of said section 75, as amended (11 U.S.C.A. § 203(r), specifically says, "for the purposes of this section, section 4–b [section 22(b)], and section 74 [section 202], the term 'farmer' * * * includes the personal representative of a deceased farmer"?

■ My conclusion is that while the term "personal representative" as used in subsection (r) of section 75 may be broad enough to include all executors and administrators of estates of deceased farmers, it does not follow that all executors and administrators may lawfully enter into bankruptcy. It was not the purpose of Congress through this legislation to attempt to add to or remove limits from the power and authority conferred by a state statute upon a personal representative created solely by virtue of such statute through an order of court authorized therein as is an administrator of an estate of a deceased person under the laws of Illinois. Rather it would seem that the sole purpose of Congress was to make sections 74 and 75 of the Bankruptcy Act, as amended (11 U.S.C.A. §§ 202, 203), available to those personal representatives of deceased farmers who by statute, will, or other creating means are given sufficiently broad powers to enable them, within the confines of such powers, to take advantage, depending on the extent of such power, of all or part of the provisions of said sections.

■■ An administrator of an estate of a deceased person in Illinois is appointed under statutes giving him strictly limited

powers. Being a creature of statute, he must derive his entire authority thereunder. Under the law of Illinois, he takes title to the personal property in the estate, but takes no interest in realty save a naked power to sell the same upon the order of the court in case the personal estate is insufficient to pay the debts of the deceased. Anderson v. Shepard, 285 Ill. 544, 121 N.E. 215; Noe v. Moutray, 170 Ill. 169, 48 N.E. 709. His right and the method he must pursue to sell real estate to pay debts is carefully and in minute detail prescribed by statute. Sections 98–112, chapter 3, Smith-Hurd Illinois Annotated Statutes; Therens v. Therens, 267 Ill. 592, 108 N.E. 712; Fell v. Young, 63 Ill. 106. The rights of heirs and creditors are carefully protected. He is required to give an additional bond in twice the value of the land sought to be sold. Section 24, chapter 3, Smith-Hurd Illinois Annotated Statutes.

The title of an administrator to the estate of his decedent has been clearly stated by the Supreme Court of Illinois as follows: "On the death of an owner of real estate the title vests at once in his heirs at law under the statute of descent, and in case administration is granted, the personal estate vests in the executor or administrator upon the granting of letters testamentary or of administration. An executor has no estate in or power over the real estate of the testator by virtue of the law and has only such estate or power as is granted by the will. An administrator takes no title to real estate, either legal or equitable, but it descends to and vests in the heirs at once upon the death of the ancestor. The administrator has neither control over nor concern with the real estate, but becomes invested by the statute only with a mere naked power to apply to a court for and obtain leave to sell the same in case the personal estate is insufficient to pay debts. The heirs hold title in their own right, subject only to the payment of the debts of their ancestor in the particular mode prescribed by law and for the purpose prescribed and may sell and convey their title without hindrance." Anderson v. Shepard, supra, 285 Ill. 544, at page 548, 121 N.E. 215, 216, citing numerous Illinois Supreme Court decisions.

Accepting the foregoing as an accurate statement of the very limited powers of an administrator under the laws of Illinois, it is difficult to see how he could, within the limitation of those powers, lawfully take advantage of said subsection (s) in so far as it applies to real estate. For him to do so would require him to take and for a period of three years retain possession of the real estate which, on the death of his decedent, vested in the heirs at law and to which, by virtue of his office, he is given neither title nor right of possession. During such period, he would be required to assume without warrant of the statute creating him the duty and responsibility of paying a reasonable rental for and farming the land, accounting for the proceeds of his farming operations, and paying the losses thereof, if any, in some way not provided for by statute. Just how would he finance his farming operations within his statutory authority? To comply with subsection (s) and to carry out its purposes, he would be required to make all reasonable efforts to refinance the loans against the land. Otherwise, the entire procedure would be futile. But he could not enter into obligations for the repayment of such refinancing loans in his official capacity under the statutes of Illinois. Whence is he to obtain his authority for entering into such obligations upon the security of land to which he has no title? Who would be willing to make a loan to one having his limited authority under the statutes of Illinois upon the security of land he does not own? How could he give a valid lien on land to which he has no title? Contemplation of the situation in which an administrator adjudicated a bankrupt would find himself while trying to carry out the provisions of subsection (s) within the powers conferred upon him by the statutes of Illinois quickly demonstrates the inapplicability of subsection (s) to him in so far as real estate may be affected.

In my opinion, an administrator under the statutes of Illinois, with his limited power and authority over the real estate of a decedent, cannot lawfully be permitted to subject the real estate of a deceased farmer to the provisions of subsection (s) of said section 75. In so holding, I do not pass upon the right of such administrator to seek a composition or extension of the deceased farmer's debts under the provisions of said section preceding subsection (s). That question is not now before me.

Since debtor's petition for adjudication must be denied and the proceedings dismissed on the first ground above discussed, and since the real estate would in any event

have to be entirely removed and released from the proceedings, it will not be necessary to consider other grounds advanced by the secured creditors in support of their motions.

The debtor's petition for adjudication will be denied and the proceedings herein dismissed.